Sophia Sieber's Appeal.

Philip C. Ranninger's Estate.

</div>

Where a testator by will made within a calendar month before his death bequeaths half of his residuary estate, converted into personalty, to his executor in trust to "place the same out at interest on good real estate security, and pay over the interest thereof annually," to S. "during the term of her natural life, and, from and immediately after the death" of S., bequeaths the principal to a charity, the bequest over is void under the act of April

Cited in McKee's Estate, 26 Pittsb. L. J. N. S. 385, 17 Pa. Co. Ct. 551.

NOTE.—Section 11 of the act of April 26, 1855 makes invalid the devise of real or personal property to any charity within one calendar month of testator's death, unless made for a valuable consideration, or unless fully executed during the testator's lifetime. Reimensnyder v. Gans, 110 Pa. 17, 2 Atl. 425; *Re* Luebbe, 26 Pittsb. L. J. N. S. 224; Vanzant's Estate, 6 Pa. Co. Ct. 625.

26, 1855, and the principal goes after the death of S. to the testator's next of kin.

The rule of construction that, in the absence of a different intention appearing in a will, a bequest of the income of personalty for life without any disposition over is a bequest of the fund itself, is inapplicable to such a case.

(Argued May 18, 1887. Decided May 30, 1887.)

July Term, 1887, No. 56, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Orphans' Court of Lancaster County dismissing exceptions to an auditor's report and directing distribution of a decedent's estate. Affirmed.

The facts as found by J. W. F. Swift, Esq., the auditor appointed to distribute the balance remaining in the hands of Henry M. Shreiner, executor of Philip Christian Ranninger, were these:

Philip Christian Ranninger died on the 19th of February, 1885, having on the 10th of February, 1885, made his last will and testament in which after a revocation of former wills, a direction that all his just debts and funeral expenses be paid, and several small pecuniary legacies including one of $300 to Sophia Sieber, niece of his deceased wife, and then employed as his housckeeper, he proceeded as follows:

"*Item.* All the rest, residue, and remainder of my estate, real, personal, or mixed, whatsoever and wheresoever, I order and direct to be converted into money as soon as the same can conveniently be done after my decease; and for that purpose I do hereby authorize and empower my said executor hereinafter named, to sell and dispose of all my said real estate, either by public or private sale or sales, for the best price or prices that can be gotten for the same, and by proper deed or deeds, conveyances or assurances in the law to be duly executed, acknowledged and perfected, to grant, convey and assure the same to the purchaser or purchasers thereof in fee simple; and when the whole of my residuary estate shall be converted into money as aforesaid, then I will and direct that the same shall be divided as follows: one full equal half part or share thereof I give, devise, and bequeath unto my said executor, hereinafter named, in trust, that he do and shall put and place the same out at interest on good real estate security, and pay over the interest thereof annually unto

the said Sophia Sieber, during the term of her natural life; and from and immediately after the death of the said Sophia Sieber, I give, devise, and bequeath the principal of the said one half, part or share of my said residuary estate to the mayor of the said city of Lancaster and his successors, and the said principal sum to be placed at interest, and the said interest arising therefrom to be used for the support of the poor and needful in the said city of Lancaster forever. And the remaining one full equal half, part or share of the proceeds of my said residuary estate, I give, devise and bequeath unto my said executor, hereinafter named, in trust, that he do and shall put and place the same out at interest on good real estate security, and pay over the interest thereof annually unto my said son, Charles Philip Ranninger, during the term of his natural life; and from and immediately after the death of my said son, Charles Philip Ranninger, I give, devise and bequeath the principal of the said one equal half, part or share of my said residuary estate, to the mayor of the said city of Lancaster and his successors, and the said principal sum to be placed at interest, and the said interest arising therefrom to be used for the support of the poor and needful in the said city of Lancaster, forever."

On the 25th day of February, 1885, letters testamentary were granted to Henry M. Shreiner, the executor named in the will. The son, and only child of the testator, Charles Philip Ranninger, died on the 21st day of February, 1885, intestate, leaving to survive him a widow, Mrs. Emily L. Ranninger, and a child, Minerva Ranninger; and letters of administration were granted, on the estate of the testator's said son, to his widow, Mrs. Emily L. Ranninger.

On September 8, 1885, the widow and administratrix of Charles Philip Ranninger, deceased, as plaintiff, v. the Mayor of the City of Lancaster, the City of Lancaster, Sophia Sieber, and Henry M. Shreiner—executor and trustee named in the last will and testament of Philip Christian Ranninger, deceased,—defendants, filed a bill in equity, praying that the charitable bequest to the mayor of Lancaster city and his successors be declared void, and in pursuance thereof the court on April 8, 1886, decreed that, under § 11 of the act of April 26, 1855, "the said charitable bequest was void by reason of the said bequest having been made within one calendar month of the testator's death."

The auditor reported, *inter alia,* as follows:

We find that Sophia Sieber is entitled to and shall be paid the interest, during her natural life, of one half of the corpus of this estate; first deducting the debts, specific legacies, and legal expenses incurred in this estate. Primarily, there can be no doubt that this was the intention of the testator. In the second place, a bequest of the (income) interest is not *per se* in law, a gift of the principal; particularly when taken into connection with the legal interpretation of § 11 of the act of assembly of 1855.

The act was intended to supply that portion of a will made void in consequence of a charitable bequest not having been made within a calendar month, prior to the testator's death. A strict construction of the law, together with our sense of what is right, would certainly not divert that portion of a testator's estate, undisposed of, to strangers. If void as a charitable bequest, the estate, when not otherwise disposed of, would unquestionably go to the next of kin of the testator.

We, therefore, conclude (as to the construction or interpretation of the act of assembly relating to his estate) that where a life estate is made by a testator, under and by virtue of the provisions of his last will and testament; and when the said testator had not made his said will within one calendar month prior to the decease, the residue, when not otherwise disposed of, goes to the next of kin of the testator.

We, therefore, direct that the corpus of one half of this estate (after the deduction of the payment of the debts, specific legacies and legal expenses incurred in this estate) shall remain in the hands of the executor and testamentary trustee, Henry M. Shreiner; and that the interest accruing annually thereon shall be paid annually to the said Sophia Sieber, during her natural life; and that after her decease the said principal sum shall be paid to the next of kin, or his legal representatives under and by virtue of the laws of the commonwealth of the state of Pennsylvania.

Exceptions to the auditor's report, *inter alia,* that the auditor did not award one half of the residuary estate to Sophia Sieber, were dismissed by the court below and the report was confirmed.

The assignments of error specified the action of the court: (1) In dismissing the above exception; and (2) in not awarding half the residuary estate to the appellant, absolutely.

*A. O. Newpher*, for appellant.—No presumption of an intent to die intestate is to be made when the words of the testator will carry the whole. Stehman v. Stehman, 1 Watts, 466; Little's Appeal, 81 Pa. 190; Raudenbach's Appeal, 87 Pa. 51; Hofius v. Hofius, 92 Pa. 305.

The testator intended to convert all his estate into personalty, and the language of his will converts his entire estate into personal property; and it is to be disposed of only as such.

The words, "All the rest, residue, and remainder of my estate, real, personal, or mixed, I order and direct to be converted into money," convert all the residue of his estate into personal property. Willing v. Peters, 7 Pa. 287; Jones v. Caldwell, 97 Pa. 42; Roland v. Miller, 100 Pa. 47; Bright's Appeal, 100 Pa. 602.

The bequest to the mayor of the city of Lancaster is void, being a bequest to a charity (1 Purdon's Digest, 252, pl. 27); and leaves the corpus of the half of the residue of the estate undisposed of. Having given the income and interest of it to the appellant, without a bequest over, or any further disposition of it, the beneficiary of the life estate is entitled to the principal or corpus of the estate.

Whenever it is possible, the bequest of the use of a thing or the product or interest of a fund is to be regarded as a bequest of the thing itself. Parker's Appeal, 61 Pa. 478, 484.

A bequest of the personal estate to a legatee for life, without any disposition of it over after his death, belongs to him absolutely. Brownfield's Estate, 8 Watts, 465; Silknitter's Appeal, 45 Pa. 365, 84 Am. Dec. 494.

A gift of the income or produce of a fund is a gift of the fund itself. Pennsylvania Co. for Ins. on Lives & G. A.'s Appeal, 83 Pa. 312; Keene's Appeal, 64 Pa. 268; France's Appeal, 75 Pa. 220; Garret v. Rex, 6 Watts, 14, 31 Am. Dec. 447.

The rule applies whether the income of the fund be given directly or through the intervention of trustees. Haig v. Swiney, 1 Sim. & Stu. 487; Hawkins, Wills, 123; Garret v. Rex, 6 Watts, 14, 31 Am. Dec. 447.

When the subject of the gift is residue, there is a strong inclination in the court in all cases to make the gift vested, when it is possible, in order to avoid intestacy. Pearman v. Pearman, 33 Beav. 396.

The testator plainly indicates that he intended to make the appellant the first and main object of his bounty. As she was

first and mainly in his mind in making his will, so will the law favor his grateful intentions and purposes. Wilson v. McKeehan, 53 Pa. 79; Rewalt v. Ulrich, 23 Pa. 388.

*William H. Livingood* and *Eugene G. Smith,* for appellee.— We admit that there is a conversion of the entire estate into personal property under the will; that a bequest of personal property to a legatee for life, without any disposition over, belongs to him absolutely; and that the right to use or consume the whole if needed is a devise of the thing itself. But here there is a bequest over; and although the bequest is void, yet it clearly shows the intention of the testator not to give the corpus of his residuary estate to Sophia Sieber; and the property thus sought to be bequeathed, being given to another, goes to the heirs or next of kin, according to law. Davis's Appeal, 83 Pa. 354.

Garret v. Rex, 6 Watts, 14, 31 Am. Dec. 447; Brownfield's Estate, 8 Watts, 465; and Keene's Appeal, 64 Pa. 268, have no application to the present case, wherein the testator appointed an active trustee to convert the estate and pay over the interest of one half "annually to the said Sophia Sieber during the term of her natural life." McDevitt's Appeal, 113 Pa. 103, 5 Atl. 777.

The act of April 26, 1855, § 11, provides that "no estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person, in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible, and at the same time, disinterested witnesses, at least one calendar month before the decease of the testator or alienor; and all dispositions of property contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin or heirs, according to law."

The bequest to Sophia Sieber and the void bequest to charity are contained in the same residuary clause. There are no words indicating that the survivor shall take. The intent is clear; hence, the void bequest must go to the next of kin—and as to the property embraced in this bequest the testator died intestate by force of the statute.

A lapsed devise in the body of the will, as well as a legacy, falls into the residuum, and goes to the residuary legatee or devisee. It was always so as to personalty, and it was made so as to realty by the Act of June 4, 1879. In Everman v. Everman,

15 W. N. C. 417, the court held: "The act of June 4, 1879, P. L. 88, makes the law respecting the devolution of a lapsed devise the same as it is in the case of a lapsed bequest. No doubt the act was passed in consequence of the decisions in Yard v. Murray, 86 Pa. 113, and Massey's Appeal, 88 Pa. 470, in the first of which it was held that a lapsed devise descends to the heir at law, and in the second that a lapsed bequest falls into the residue and goes to the residuary legatee. Having in view the old law, the mischief and the remedy, we are of opinion that the act of 1879 was intended to apply only to lapsed specific devises in the body of the will, and that as to lapsed shares of the residue, no change was intended or effected."

If the residue of an estate, either real or personal, is given to persons by name, and not in a class, each is entitled to a share and no more; and if there should be a lapsed share of the residue, it goes to the next of kin if it consists of personalty, and to the heirs, if realty. Williams v. Neff, 52 Pa. 326, and Neff's Appeal, 52 Pa. 326; Barber v. Barber, 3 Myl. & C. 688; Spencer v. Wilson, L. R. 16 Eq. 501; Sohier v. Inches, 12 Gray, 386.

The act of 1879 is a copy of the English wills act of 1837. Bagwell v. Dry, 1 P. Wms. 700; Man v. Man, 2 Strange, 905; Craighead v. Given, 10 Serg. & R. 354.

This act of 1855 is not in conflict with the intestate laws, or any law relating to the distribution or devolution of decedents' estates. The act reads: "And all dispositions of property contrary hereto shall be void, and go to the residuary legatee or devisee, next of kin, or heirs, according to law." That is, the void devise or legacy is to be distributed according to law. As to property embraced in the void devise or bequest, the decedent dies intestate.

Residuary legatees are named in this act simply because in cases where a bequest or devise is made in the body of the will to some charity, and afterwards, in the residuary clause, the residue of the estate is bequeathed to a person, then in case of lapse or voidance it would fall into the residue and go to the residuary legatee. But in any event Miss Sieber, according to the clearly expressed intention of this testator, was to receive only the interest of one half of the corpus of the residuary estate; and in the event of a lapsed bequest even in the body of the will, it would be added to the corpus of the residuary, and there-

by only increase the interest; the corpus would go to the next of kin.

PER CURIAM: '

The language of the will of the testator is such that in our opinion it is clear he intended to give to the appellant the in-terest during her life only, of one half of his residuary estate. The failure of the devise ever to take effect did not enlarge her portion. As to that he died intestate.

Decree affirmed and appeal dismissed, at the costs of the appellant